IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERIC EICHEL, Individually and as Personal Representative of the Estate of Randi Eichel<br><br>&<br><br>SHANNAH EICHEL, a minor by and through her father and next friend Eric Eichel<br><br>Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant | CIVIL ACTION NO. MJG-02-4207 |

\* \* \* \* \*\*\* \* \* \* \*

**STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF
FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677**

It is hereby stipulated by and between the undersigned plaintiffs (meaning any person, other than the defendant and the structured settlement broker, signing this agreement, whether or not a party to this civil action), including Eric Eichel, as well as Shannah Eichel, and the United States of America, by and through their respective attorneys, as follows:

1. The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth

A+ by A.M. Best rating service, the sum of Three Hundred Sixty Thousand and no/100 Dollars ($360,000.00) to purchase the annuity contract(s) described in paragraph 3.b., below.

   ii. To the plaintiffs and their attorney, Karl J. Protil, Jr., Esquire, the sum of Four Hundred Forty Thousand and no/100 Dollars ($440,000.00). The check will be made payable to "Eric Eichel, Personal Representative of the Estate of Randi Eichel," and "Shulman, Rogers, Gandal, Pordy & Ecker, P.A.", and should be mailed to plaintiffs' attorneys at the following address: Karl J. Protil, Jr., c/o Shulman, Rogers, Gandal, Pordy & Ecker, P.A., 11921 Rockville Pike, Rockville, Maryland 20852.

   The parties agree that any attorneys' fees owed by the plaintiffs in this action against the United States shall not exceed 25% of the settlement amount (28 U.S.C. § 2678). The parties further agree that any such attorneys' fees, along with any costs and expenses of said action against the United States, and any costs, expenses, or fees (including legal fees) associated with obtaining any court approval of this settlement, will be paid out of the amount paid pursuant to Paragraph 3.a.ii., above, and not in addition thereto. The parties agree that any legal fees, including guardian ad litem fees, incurred in obtaining any court approval of this settlement shall be considered attorneys' fees and not costs, and shall be subject to the provisions of 28 U.S.C. § 2678.

   The plaintiffs stipulate and agree that they are legally

3

responsible for any and all liens or claims for payment or reimbursement, including any liens or claims by Medicaid or Medicare. Plaintiffs and their attorneys stipulate and agree that the plaintiffs, by and through their attorneys, will satisfy or resolve any and all liens or claims for payment or reimbursement asserted by any individual or entity before distributing to plaintiffs any portion of the amount paid pursuant to Paragraph 3.a.ii., above.  The plaintiffs and their attorneys further agree that, no later than ninety (90) days from the date the United States wire transfers the settlement amount, plaintiffs' attorneys shall provide to the United States evidence that each such lien or claim has been satisfied or resolved and that all lien-holders and claimants have waived and released all such liens and claims.  The evidence required by the terms of this Paragraph may be satisfied by a letter from plaintiffs' attorneys representing to counsel for the United States that each such lien or claim has been satisfied or resolved and that all lien-holders and claimants have waived and released all such liens and claims.

      b.   The United States will purchase an annuity contract to make the following payments:

          (1)   **Payee:   Eric Eichel   D.O.B.: 08/17/1972**

              $50,000 lump sum certain payable on 06/15/2009;
              $50,000 lump sum certain payable on 06/15/2014.

    (2) **Payee:**    Shannah Eichel    D.O.B.: 01/17/1999

$25,000 a year for 4 years certain only.
Payments begin 01/17/2017.

$263,406.85 lump sum certain payable on 01/17/2021.
$319,881.40 lump sum certain payable on 01/17/2024.

In the event the annuity purchase price has changed by the time of funding, the two lump sum annuity payments for Shannah will be adjusted either upward or downward so that the total purchase price of the annuity contract shall be neither more than nor less than Three Hundred Sixty Thousand and no/100 Dollars ($360,000.00).

The beginning date for the payments set forth above for Shannah Eichel has been determined based upon information supplied to the United States as to the birth date of that Payee. Should that Payee's actual birth date be later than the date noted above, then the Annuity Issuer may hold any payments due prior to that Payee reaching the age of majority until either (1) such time as that Payee reaches his/her 18th birthday, or, (2) such time as the Annuity Issuer receives notice of the appointment of a legal guardian to which the payment(s) can be made for the benefit of that Payee. In addition, should the corrected birth date of that Payee cause a change in the price of the annuity for any payment set forth above, then the amount of the payments affected by the corrected birth date for that Payee shall be adjusted so the benefits of the contract are what the premiums paid for that Payee's payments would have purchased on the date of the annuity's

5

purchase. In no event shall the total cost of the annuity for both Payees be either more than or less than Three Hundred Sixty Thousand and no/100 Dollars ($360,000.00).

The annuity contract(s) will be owned solely and exclusively by the United States and will be purchased as soon as practicable following the execution of this Stipulation For Compromise Settlement And Release. The parties stipulate and agree that the United States' only obligation with respect to said annuity contract(s) and any annuity payments therefrom is to purchase the annuity contract(s), and they further agree that the United States does not guarantee or insure any of the annuity payments. The parties further stipulate and agree that the United States is released from any and all obligations with respect to the annuity contract(s) and annuity payments upon the purchase of the annuity contract(s).

The parties stipulate and agree that the annuity company that issued the annuity contract(s) or its assignee(s) shall at all times have the sole obligation for making all annuity payments. The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check in the amount of such payment to the address designated by the party to whom the payment is required to be made under this Stipulation For Compromise Settlement And Release. Checks lost or delayed through no fault of the annuity company shall be promptly replaced by the

annuity company, but the annuity company is not liable for interest during the interim.

The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein or any assets of the United States or the annuity company are subject to execution or any legal process for any obligation in any manner, and that the plaintiffs shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

Plaintiffs and their guardians, heirs, executors, administrators or assigns do hereby agree to maintain with the annuity company and the United States a current mailing address, and to notify the annuity company and the United States of the death of any beneficiary of said annuity contract(s) within ten (10) days of death.

In the event of the death of a Payee during a period of certain payments specified in paragraph 3.b. above, all remaining certain payments from the annuity purchased pursuant to paragraph 3.b. above, shall be made payable to the Estate of that Payee, or to any secondary beneficiary designated by that Payee during that Payee's lifetime (after reaching the age of majority, if applicable), provided that any such designation shall be in writing and in a form acceptable to the United States and the annuity

7

issuer.

4.  Plaintiffs and their guardians, heirs, executors, administrators, and assigns agree to and do accept this settlement in full settlement and satisfaction and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including without limitation any claims for fees, costs, expenses, survival or wrongful death, arising from any and all known or unknown, foreseen or unforeseen bodily injuries, personal injuries, death, or damage to property, which they may have or hereafter acquire against the United States of America, its agents, servants, or employees on account of the subject matter of this civil action, or that relate or pertain to or arise from, directly or indirectly, the subject matter of this civil action. Plaintiffs and their guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States of America, its agents, servants, and employees from and against any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including without limitation claims for subrogation, indemnity, contribution, or lien of any kind, or for fees, costs, expenses, survival or wrongful death that relate or pertain to or arise from, directly or indirectly, any act or omission that relates to the subject matter of this civil action.

5.  This compromise settlement is specifically subject to

each of the following conditions:

    a.    An agreement by the parties on the terms, conditions, and requirements of this Stipulation For Compromise Settlement And Release and the annuity contract(s). The parties stipulate and agree that the Stipulation For Compromise Settlement And Release and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions and requirements of this Stipulation For Compromise Settlement And Release and the annuity contract(s). The terms, conditions and requirements of this Stipulation For Compromise Settlement And Release are not severable and the failure to agree, fulfill or comply with any term, condition, or requirement renders the entire Stipulation For Compromise Settlement And Release and the compromise settlement null and void. The authorization by the Attorney General or the Attorney General's designee to negotiate and consummate a settlement for the amount agreed upon by the parties does not make the settlement binding upon the United States unless and until the other terms, conditions and requirements of this Stipulation For Compromise Settlement And Release have been completely agreed upon in writing.

    b.    Any beneficiary of the annuity contract(s) set forth above in paragraph 3.b. must be alive at the time of the purchase of said annuity contract(s). In the event of the death of any beneficiary prior to the date the annuity contracts are purchased,

the entire Stipulation and the compromise settlement are null and void.

      c.    Plaintiffs and their guardians, heirs, executors, administrators, and assigns will retain an attorney (whose fees will be paid in accordance with Paragraph 3a.ii. above) to affirm that the terms and conditions of the Stipulation For Compromise Settlement And Release are fair, reasonable, and adequately provide for and protect the interests of Shannah Eichel, the minor child of Eric Eichel, given their rights and interests and potential rights and interests arising out of the subject matter of plaintiff's complaint. A copy of the attorney's opinion letter is attached hereto as Exhibit 1.

      d.    Plaintiffs shall obtain Court approval of the settlement at their expense. Such court approval must be obtained prior to the purchase of the annuity contract(s) set forth above in paragraph 3.b. Plaintiffs agree to obtain such approval in a timely manner: time being of the essence. Plaintiffs further agree that the United States may void this settlement at its option in the event such approval is not obtained in a timely manner. In the event plaintiffs fail to obtain such Court approval, the entire Stipulation For Compromise Settlement And Release and the compromise settlement are null and void.

    6.    Plaintiffs' attorney agrees to distribute the settlement proceeds among the plaintiffs and to obtain a dismissal of the

Date: 5/20/04

*(signature)*

CHARLES F. GORMLY
*as Independent Counsel and Representative of Shannah Eichel (minor child)*

Date: 6/2/04

*(signature)*

Tarra DeShields
Assistant United States Attorney,
*Attorney for the United States of America*

Date: _____

_____
Lawrence H. Curtis
Ringler Associates Structured Settlements

12

LAW OFFICES

# CHARLES F. GORMLY
ATTORNEY AT LAW
1050 17th STREET, N.W.
SUITE 1250
WASHINGTON, D.C. 20036

LICENSED IN MARYLAND AND
THE DISTRICT OF COLUMBIA

(202) 547-7053
FAX:   (202) 547-5321

May 17, 2004

Karl J. Protil, Jr., Esquire
Shulman, Rogers, Gandal,
 Pordy & Ecker, P.A.
11921 Rockville Pike, Third Floor
Rockville, Maryland 20852

    Re:    **Settlement**
           <u>**Eichel v. United States**</u>

Dear Mr. Protil:

    As we discussed, I am evaluating this settlement per an agreement between your office and the U.S. Attorney's office as an independent advocate reviewing the matter on behalf of Shannah Eickel, the minor child of the deceased.

    In performing this evaluation, I have reviewed your letter to me dated May 5, 2004 as well as your settlement notebook with exhibits, the demand letter to the U.S. Attorney's office and your ex parte submission to Magistrate Judge Paul W. Grimm of the U.S. District Court for the District of Maryland. I also have the draft Stipulation of Settlement prepared by you and the U.S. Attorney's office. Finally, with your consent I spoke to the father of the minor, co-plaintiff Eric Eichel.

    This is a tragic case involving the painful, in fact, gruesome complications leading to the death of Mrs. Randi Eichel, a young mother who died after numerous medical procedures. It is alleged that an incorrect asthma-related diagnosis resulted in the treatment of high dosage corticosteroids which compromised the decedent's immune system resulting in the infection that lead to her death. The United States vigorously denies these claims.

Karl J. Protil, Jr., Esquire
May 18, 2004
Page Two

### Settlement Process

This case has not only been the subject of litigation and discovery in the District Court but was also submitted for a settlement conference before Magistrate Judge Grimm in March of 2004. The involvement of the Magistrate Judge in reaching the proposed settlement is a factor that I consider and give some deference to, given both Judge Grimm's reputation and the fact that, as the Magistrate Judge in that District Court, he would have a strong understanding of the likely outcomes both with regard to liability and damages should the matter go to trial.

Also, I consider the fact that plaintiff's counsel has significant experience in the field of Federal Tort Claims litigation and is part of a leading firm in the personal injury/malpractice field. I am not concerned that counsel lacks the abilities and resources to take this case to trial, if required.

### Liability

My review of the exhibits provided, particularly the expert reports on both sides, indicates to me that the plaintiffs have a strong liability claim. Certainly the plaintiffs' reports appear to be more in depth and reasoned than the rather cursory analysis provided by the defense experts. Nevertheless, I have to consider that almost any malpractice case will present problematic causation issues and the testimony from the government's doctors may prove more compelling than their reports.

If the court accepts the position, advanced without reservation by Doctor Buescher, that the claim of vocal cord dysfunction was insignificant and that the asthma diagnosis was accurate, the claim will be highly compromised. Further, if the court also concluded, as do Doctor Buescher and Doctor Muncie, that the subsequent infection was so exceedingly rare that it was not a reasonably likely outcome of the treatment, then the unfortunate result will almost certainly be no recovery for the plaintiffs -- compounding the loss, to the minor especially.

### Damages

The damages picture in this case is somewhat clearer than the liability claim. I have relied on Mr. Protil's presentation that this matter is subject to the damages law in the State of Florida in the Fall of 1999 and I have relied upon the Statutes he has provided in my assessment.

Karl J. Protil, Jr., Esquire
May 18, 2004
Page Three

There is no question that all of the interested parties on the plaintiffs' side have suffered significant economic and non-economic injuries as a result of this loss. The parties' economists appear to present a range of economic loss from a high of $1,850,000.00 (lost wages and loss of home services) to a low of $980,000.00. The minor is entitled to a portion of the loss of home services claim. Non-economic damages for the minor, pursuant to Florida Statute 768.21(3) provides that "minor children of a decedent...may also recover for lost parental companionship, instruction, and guidance, and for pain and suffering from the date of injury."

### Division of Settlement Proceeds, Fees and Costs

The proposed settlement requires that the United States pay a cash sum of $800,000.00 which will be used to purchase an annuity contract paying benefits to the surviving spouse and the minor ($360,000.00) and a cash payment out of which payments to the attorney will be made with the balance going to the estate and the surviving spouse.

This matter is subject to the limitations set forth in the Federal Tort Claims Act and the parties agree that the attorney's fees owed by the plaintiffs shall not exceed twenty-five percent of the total settlement or $200,000.00. Given the complexity of this case, and the fact that such matters would typically be litigated in this jurisdiction under a forty percent retainer fee, I have no reservations about the payment of these fees. The costs as described to me by Mr. Protil seem in line with this type of litigation.

The annuity contract proposed to be purchased is largely for the benefit of the minor, although there are two proposed payments of $50,000.00 to the father over the next ten years. Based on my review of the information provided to me, it seems likely that Mr. Eichel will be using those payments for the benefit of himself and his daughter and therefore I do not object to them.

The payments to Shannah are significant. Beginning in January of 2017 when it is anticipated that she will be beginning college, there are four proposed payments of $25,000.00 each. In the purchasing of annuities for minor beneficiaries in a civil case, it has been my experience that these sorts of "college funds" are regularly purchased and it seems under the circumstances to be a prudent measure. The proposed settlement also results in lump sum payments to Shannah of $263,406.85 on January 17, 2021 and $319,881.40 on January 17, 2024. I have seen many different approaches to

Karl J. Protil, Jr., Esquire
May 18, 2004
Page Four

payments in the post-college years. Some, like this proposal, make significant lump-sum payments while others are broken down into more long-term monthly or quarterly payments. Some of the factors that I consider in evaluating the appropriateness of these lump-sums is the degree to which it seems likely that her father will be able to provide for her during her childhood and the likelihood that Shannah will be in a position to wisely handle such a significant lump-sum.

I discussed these issues at some length with Mr. Eichel. He and Shannah are now living in Colorado where there is family support available. The father is working and seems to be doing well professionally. Shannah has begun school and, according to Mr. Eichel, her last parent-teacher conference was very positive. As opposed to some minor guardianships I have been involved in, where such significant lump sums would be a cause for extreme concern, this appears to be a family atmosphere in which the proposed structure is not inappropriate.

### Conclusion

In the event of the plaintiffs prevailing on the liability question, I believe it is highly likely the award of damages would be in excess of the proposed settlement amount. The question, faced in all such cases, is what figure appropriately accounts for the risk of a "zero recovery" in the event of a defense verdict. Also, the costs of proceeding to trial must be considered. Even in the event of a successful outcome at trial, the net would likely be reduced by $75,000-100,000 due to litigation costs. For the reasons set out above, I do not object to the figure of $800,000 that the parties have reached

Further, I think the proposed settlement is fair and reasonable as it relates to the minor child. I conclude that her father, with the help of counsel, proceeded in a way consistent with her best interests and that he has the sufficient sophistication to understand the consequences of the choices made on her behalf.

Very truly yours,

Charles F. Gormly

CFG/cab